177 So. 593

**SHREVEPORT LONG LEAF LUMBER CO.**
**v. JONES.**

No. 34340.

Nov. 2, 1937.

Rehearing Denied Nov. 29, 1937.

John G. Gibbs, of Natchitoches, for appellant.

Hunter & Hunter, of Shreveport, and Rusca & Cunningham, of Natchitoches, for appellee.

ODOM, Justice.

This is a suit on a promissory note. Plaintiff alleged that it is a Louisiana corporation with its domicile in Shreveport, Caddo parish, La., and the holder and owner of a promissory note for $2,184.32 with 8 per cent. interest from its date, made payable to it for a valuable consideration and executed by the defendant, Jas. W. Jones, Jr.; that said note was overdue and unpaid.

Defendant in limine filed a plea of lis pendens, and, in the alternative, filed exceptions of no right and no cause of action. Further in the alternative, he alleged that in case his pleas and exceptions were overruled, he was entitled to oyer of the note sued on. He filed also a motion to recuse the judge.

The court overruled the pleas and exceptions, as well as the motion to recuse, and ordered plaintiff to produce the note, which was done.

Defendant then filed answer, in which he admitted that he signed the note sued on, but alleged that "he is not indebted to the plaintiff company in any amount, which

will be more fully hereinafter shown," and that "he at no time owed plaintiff anything."

Article 8 of defendant's answer reads as follows:

"Further answering, respondent shows that he at no time owed the Shreveport Long Leaf Lumber Co. any amount and that the said note herein declared upon, while it was signed by defendant, was made and executed through error and without any consideration whatsoever, and respondent specially pleads failure of consideration, or lack of consideration in said note, and shows that same should be declared illegal, uncollectable and having been executed without any consideration should be returned to the maker, your respondent."

There was judgment in favor of plaintiff as prayed for, and the defendant appealed.

### On the Plea of Lis Pendens.

 There is no merit in this plea. The facts are that on October 18, 1935, plaintiff filed suit on the note involved in the present suit. The first suit was numbered 22269. But when the plaintiff attempted to advance the first suit to the trial stage, the record could not be found. It had "disappeared," and nothing could be done. Whereupon, plaintiff filed the present suit on the same note, alleging, among other things, that the record in the first suit had been "removed from the office of the Clerk of said Court and that no receipt was given therefor, and that said suit was not recorded upon the judicial records of said court as required by law," and for these reasons "plaintiff now takes a non-suit, without prejudice, in the suit bearing No. 22,269

entitled Shreveport Long Leaf Lumber Company, Inc., versus Jas. W. Jones, Jr., on the docket of this court."

Article 491 of the Code of Practice says that:

"The plaintiff may, in every stage of the suit previous to judgment being rendered, discontinue the suit on paying the costs."

The motion to discontinue takes effect the moment it is filed, without an order of dismissal by the court. Person v. Person, 172 La. 740, 135 So. 225. From the moment the second suit was filed, there was no "lis pendens," or pendency of another suit. The first suit was under plaintiff's control and was dismissed or discontinued by express declaration or motion set out in the second petition. Before proceeding with the second suit, plaintiff paid all costs of the first suit. Code of Practice, art. 492.

### Exception of No Cause and No Right of Action.

 The basis of these exceptions is not stated in the exceptions themselves, but, as stated in defendant's brief, is: (1) That "there is no allegation in the petition of the corporate existence of the named plaintiff and that it has authority to do business in this State and stand in judgment therein"; and (2) that there is no "intimation in the record that the plaintiff had paid its franchise tax."

It does not appear either from the wording of the exception filed or from defendant's brief that he intended to attack the corporate existence or capacity of the plaintiff. He says in his brief that there is no

allegation of plaintiff's "corporate existence." Defendant is in error. We quote the following from the petition:

"The petition of Shreveport Long Leaf Lumber Company, Inc., a Louisiana corporation, domiciled in the city of Shreveport, Parish of Caddo, State of Louisiana, herein represented by Tom S. Pittman, its duly authorized Vice-President with respect represents;"

That was a sufficient representation of plaintiff's corporate existence, and it was not necessary that plaintiff allege that it had authority to do business in this state and stand in judgment. The suit was brought, according to the petition, by a domestic corporation. The law confers upon domestic corporations the right to sue, to be sued and stand in judgment, and to transact business in the state. Act No. 250 of 1928, p. 409, which is an act "To provide for the Incorporation, Regulation, * * * of Certain Corporations for Profit," says in section 12 that any corporation formed under it or existing prior to its adoption "shall have the capacity to act possessed by natural persons," and authority (c) "to contract, sue and be sued in its corporate name" and (f) "to conduct business in this State."

■ While we do not think that either the wording of the exceptions or the specific statements in defendant's brief warrant the conclusion that he intended to attack the corporate existence or capacity of the plaintiff, yet if it be contended that defendant intended to do so, the answer to such contention would be that he is estopped from denying plaintiff's capacity or existence because the note sued on, which defendant admits he signed, is made payable to the "Shreveport Long Leaf Lumber Company, Incorporated." He, therefore, knew he was dealing with plaintiff as a corporation and in its corporate capacity. Reynolds et al. v. St. John's Grand Lodge, 171 La. 395, 131 So. 186.

■ Plaintiff did not allege that it had paid the franchise tax levied by Act No. 10. First Extra Session of 1935. Hence the exception of no right of action, defendant's argument being that "the payment of a franchise tax is a condition precedent from year to year to the existence or continued existence of the corporation." Brief, p. 8.

Not the slightest basis for this argument is found in the act. It levies an annual franchise tax on all corporations for the privilege of doing business in this state and sets out the method of determining the amount of the tax and the machinery for collecting it. But nowhere in the act is it stated or intimated that the payment of the tax is a condition precedent to the corporation's engaging or continuing to engage in business. It is a revenue act pure and simple, the fund realized from the collection of the tax being dedicated to specific purposes. See section 11. Section 8 of the act provides that if the tax is not paid, a certificate to that effect made by the Secretary of State, showing the amount due, shall, when filed for record, operate as a first lien and privilege on all the property of the corporation, and that after fifteen days' notice to the tax debtor "the said Secretary of State shall cause the sheriff * * * to seize, adver-

tise * * * and sell" the property of the corporation for the payment of the tax. This is the penalty, and the only one, visited upon the corporation for its failure to pay the tax.

But even if it be true (and it is not), as counsel argues, that the payment of the tax is a condition precedent to the plaintiff's engaging in business, whether the tax is paid or not, and whether the corporation is unlawfully exercising corporate powers, are matters which concern the state and not the defendant; that is the state's business.

"If the state acquiesce in the usurpation of corporate powers, individuals cannot complain." New Iberia Sugar Co. v. LaGarde, 130 La. 387, 58 So. 16, 18; Weil v. Leopold Weil Building Co., 126 La. 938, 53 So. 56. These exceptions were properly overruled.

### On the Motion to Recuse.

The defendant is judge of the Tenth judicial district court, where the suit was filed. On motion of plaintiff's counsel and after many delays and some litigation, which finally reached this court (Shreveport Long Leaf Lumber Co. v. Jones, 185 La. 30, 168 So. 484), defendant recused himself and appointed the Honorable R. C. Culpepper, judge of an adjoining district, to try the case. After defendant filed his answer, he filed a motion to recuse Judge Culpepper, setting out that since Judge Culpepper was appointed to try the case the plaintiff's representatives and attorneys visited the judge on several different occasions and discussed various proceedings and activities of the cause with the view of un-

duly influencing and prejudicing the mind of the judge; that in the opinion of the defendant the judge ad hoc was unduly influenced, and that he cannot obtain a fair and impartial trial. Defendant also sets up that the judge passed on all the various motions and exceptions filed without considering them; that prior to ruling on these exceptions the judge ad hoc did not read the pleadings and that defendant was not allowed to brief the exceptions and pleas; that counsel for plaintiff was permitted to enter a nonsuit and that defendant was denied his plea of lis pendens; that in answer to defendant's prayer for oyer of the note sued on, the judge ad hoc ordered the note produced, which was done, and that fifteen minutes later plaintiff was permitted to withdraw the original and to substitute a photostatic copy thereof; that defendant's newly employed counsel asked for additional time to brief the exceptions and motions, which time was denied by the judge ad hoc; that these requests being denied him, his counsel objected to a default being allowed, which objection was overruled; and that the default was allowed.

It is further alleged in this motion to recuse: "That the said Judge ad hoc has stated since the proceedings had in this cause and out of court, that he considered the exceptions and motions was (were) filed for the purpose of delay, all of which shows that the motions and exceptions were lightly considered, and the said judge ad hoc never having read the petition, the exceptions and pleas, and refusing to allow and consider briefs on either has completely denied your mover his day in court."

It is further alleged in the alternative "that the said Judge ad hoc has never taken the required oath as a special judge in this cause, and is not now under the oath· required under the laws of this state."

The grounds for recusation set up in this motion are frivolous. The grounds for recusation are set out specifically in article 338 of the Code of Practice. Not one of the alleged causes set out in defendant's motion is included in that article of the Code. What this court said in State of Louisiana v. Louis Chantlain, 42 La.Ann. 718, 7 So. 669, 670, seems to fit the present case like a glove. The court in that case said:

"The Code of Practice (art. 338) is very explicit in defining and limiting the causes for which a judge may be recused. He can not be recused, nor, under article 340, can he recuse himself, for any other causes than those so specifically mentioned.

"The motion made by defendant sets forth no one of these causes. It was frivolous on its face, made only on the eve of trial, and could have no purpose or effect but to create delay."

## On the Merits.

Plaintiff offered in evidence the note sued on, dated December 22, 1932, which note recites that it was given for "value received." Plaintiff called as a witness Mr. Tom S. Pittman, vice president of the corporation, who testified that the defendant, who lives in Natchitoches, La., made a trip to Shreveport, the home office of the company, and there told him that if he was given further time he would pay the note. The testimony of this witness was not denied by defendant. Furthermore, plaintiff offered in evidence a letter written to plaintiff's attorneys by defendant, dated March 25, 1935, which letter reads as follows:

"In Re Suit No. 22269

"Did not get to write you on Saturday as promised on account being in Court all day.

"I understand that you wish me to advise what period of extension I wish to pay the note given for building material sold me by the Natchitoches Lumber Yard and on what terms of settlement.

"I feel that I can pay the ammount as follows—50% in September and 50% in October 1935, and accordingly I understand that you agree to let the suit filed remain as it is now, without further action or prosecution of the suit until that date.

"Please advise me as to whether this will be acceptable.

"Yours very truly,

"Jas. W. Jones, Jr."

Defendant offered no testimony whatever. He admitted in answer that he signed the note sued on, but alleged that he did not then and never had owed the plaintiff anything. The answer was verified by defendant's personal affidavit, made before a deputy clerk of court. But he did not explain or offer to explain why he signed the note, if he did not owe the amount specified therein.

Judgment is affirmed, with all costs.

HIGGINS, J., takes no part.